IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| XPOINT TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 09-628-SLR |
| | ) | |
| MICROSOFT CORP., et al., | ) | |
| | ) | |
| Defendants. | ) | |

David J. Margules, Esquire, and Sean M. Brennecke, Esquire of Bouchard Margules & Friedlander, P.A., Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Chad Johnson, Esquire, Joshua L. Raskin, Esquire, Jai Chandrasekhar, Esquire, Adam Wierzbowski, Esquire, Karine Louis, Esquire, and Sean O'Dowd, Esquire of Bernstein Litowitz Berger & Grossman LLP, New York, New York; William H. Mandir, Esquire, John F. Rabena, Esquire, Kelly G. Hyndman, Esquire, Brian K. Shelton, Esquire, and Eric S. Barr, Esquire of Sughrue Mion, PLLC, Washington, D.C.

Richard K. Herrmann, Esquire, Mary M. Matterer, Esquire, and Amy A. Quinlan, Esquire of Morris James LLP, Wilmington, Delaware. Counsel for Defendants Research In Motion Ltd. and Research In Motion Corp. Of Counsel: Linda S. DeBruin, Esquire, David Rokach, Esquire, and M. Ryan Pohlman, Esquire of Kirkland & Ellis LLP, Chicago, Illinois.

William J. Wade, Esquire, Anne Shea Gaza, Esquire, and Stephen M. Ferguson, Esquire of Richards, Layton & Finger P.A., Wilmington, Delaware. Counsel for Defendant Advanced Micro Devices, Inc. Of Counsel: Mark E. Miller, Esquire, and Nora M. Puckett, Esquire of O'Melveny & Myers, LLP, San Francisco, California.

Sean T. O'Kelly, Esquire of Cross & Simon, LLC, Wilmington, Delaware. Counsel for Defendant Hewlett-Packard Co. Of Counsel: Kell M. Damsgaard, Esquire of Morgan, Lewis & Bockius LLP, Philadelphia, Pennsylvania; Nathan W. McCutcheon, Esquire, and Mark W. Taylor, Esquire of Morgan, Lewis & Bockius LLP, Washington, D.C.

Melanie K. Sharp, Esquire of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware.  Counsel for Defendant Alacritech, Inc.  Of Counsel:  Mark A. Lauer, Esquire, and Thomas W. Lathram, Esquire of Silicon Edge Law Group LLP, Pleasanton, California.

## MEMORANDUM OPINION

Dated:  August 12, 2010
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Xpoint Technologies, Inc. ("Xpoint") filed the present patent litigation against 44 parties[1] on August 21, 2009.  (D.I. 1)  Xpoint filed an amended complaint on September 18, 2009, seeking damages and injunctive relief for defendants' alleged infringement of United States Patent No. 5,913,028, entitled "Client/Server Data Traffic Delivery System and Method" ("the '028 patent").  (D.I. 32 at ¶ 2)  The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a).

Presently before the court are motions to dismiss for failure to state a claim filed by defendants Research In Motion Ltd. and Research In Motion Corp. (collectively, "RIM"), as well as Advanced Micro Devices, Inc. ("AMD"), Hewlett-Packard Co. ("HP"), and Alacritech, Inc. ("Alacritech") (collectively, "defendants").[2]  (D.I. 103; D.I. 153; D.I. 154; D.I. 164)  For the reasons that follow, the court grants in part and denies in part defendants' motions to dismiss.  Specifically, AMD, RIM, and Alacritech's motions regarding the indirect infringement claims are granted (with leave for plaintiff to amend), but defendants' motions regarding the direct infringement claims are denied.

---

[1] The 44 defendants encompass 32 groups of affiliated corporate entities.

[2] The motions to dismiss were filed by RIM on December 16, 2009 (D.I. 103); AMD on December 18, 2009 (D.I. 153); and Alacritech on December 18, 2009 (D.I. 164).  HP filed a motion for joinder in AMD's motion to dismiss on December 18, 2009. (D.I. 154)  The remaining 39 defendants filed answers.

## II. BACKGROUND[3]

The '028 patent was issued to Xpoint, as assignee of the inventors, on June 5, 1999. (D.I. 32 at ¶ 2)  The '028 patent is directed to "a direct data-delivery system and method for program-controlled, direct transfer of data along a bus or data pathway between peer input/output ("I/O") devices in a data-processing apparatus or data-processing network." (*Id.* at ¶ 4)  Plaintiff asserts that such direct data transfer between I/O devices optimizes the speed and efficiency of an apparatus or network by allowing data to bypass the central processing unit ("CPU") and thereby preserve the CPU's capacity for other applications. (*Id.*)  For example, the technology allows a digital camera to transfer data directly from the camera sensor to the LCD screen and display images on the camera's screen instantly and continuously. (*Id.* at ¶ 5)  Plaintiff asserts that the '028 patent technology provides enhanced functionality to data-processing devices, which include electronic devices like cell phones, personal media players, personal computers, and global positioning system ("GPS") devices. (*Id.*)

Plaintiff generally avers that each defendant "manufactures, uses, sells and offers to sell, and/or imports . . . products and services that infringe, directly and/or indirectly . . . one or more claims of the '028 patent" in violation of 35 U.S.C. § 271. (*See id.* at ¶¶ 149-81)  Defendants are also allegedly "aiding, abetting, and contributing to, and actively inducing infringement of the '028 patent." (*Id.* at ¶ 181)  Plaintiff alleges that defendants' infringement was and continues to be willful because "[a]t all relevant times, [d]efendants have had actual and constructive notice that their conduct infringed

---

[3] For purposes of the motions to dismiss, the facts as alleged in Xpoint's amended complaint (D.I. 32) will be taken as true.

2

on the claims of the '028 patent but nevertheless continued their infringing conduct." (*Id.* at ¶ 185)

## III. STANDARD OF REVIEW

In reviewing a motion filed under Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations of the non-moving party as true and draw all reasonable inferences in its favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (interpreting Fed. R. Civ. P. 8(a)) (internal quotations omitted). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 545 (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* Furthermore, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Such a determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.*

## IV. DISCUSSION

### 1. Direct Infringement

A cause of action for direct infringement arises under 35 U.S.C. § 271(a), which provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention . . . during the term of the patent therefor, infringes the patent." To state a claim of direct infringement, "a patentee need only plead facts sufficient to place the alleged infringer on notice as to what he must defend." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007) (citing *Twombly*, 550 U.S. at 565 n.10). The Federal Circuit Court of Appeals in *McZeal* held that, for a direct infringement claim, Federal Rules of Civil Procedure Form 18[4] (2009) meets the *Twombly* pleading standard. *See McZeal*, 501 F.3d at 1356-57. That is, only the following is required: "(1) an allegation of jurisdiction; (2) a statement that plaintiff owns the patent; (3) a statement that defendant has been infringing the patent by 'making, selling, and using [the device] embodying the patent'; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages." *McZeal*, 501 F.3d at 1357; *see also Mallinckrodt Inc. v. E-Z-EM Inc. (Mallinckrodt I)*, 670 F. Supp. 2d 349, 353 (D. Del. 2009) (interpreting Form 18 to require the same elements); *S.O.I.TEC Silicon on Insulator Techs., S.A. v. MEMC Elec. Materials, Inc.*, Civ. No. 08-292-SLR, 2009 WL 423989, at *2 (D. Del. Feb. 20, 2009) (same).

Plaintiff has made an allegation of jurisdiction (D.I. 32 at ¶¶ 68-146), stated that it owns the patent (*id.* at ¶¶ 2, 148), given defendants notice of their infringement (*id.* at ¶ 181), and made a demand for injunction and damages (*id.* at ¶ 184). However,

---

[4] Formerly, Form 16.

4

defendants assert that plaintiff's complaint does not meet the third element for a

sufficient pleading, which requires identification of the alleged infringement.  Form 18

provides, by example, a statement that defendant infringes by "making, selling, and

using electric motors that embody the patented invention;" no further detail regarding

said electric motors is provided.  Fed. R. Civ. Pro. Form 18 (2009).  As this court has

previously held, it is not necessary to identify specific products, i.e. model names, but

plaintiff's pleadings must mimic Form 18 and identify a general category of products.

*See Eidos Commc'ns, LLC v. Skype Techs. SA*, 686 F. Supp. 2d 465, 469 (D. Del.

2010); *see also S.O.I.TEC*, 2009 WL 423989, at *2 (rejecting challenge to an

infringement complaint accusing "silicon on insulator wafers and other engineered

semiconductor substrates" of infringement).

    A plaintiff is not required to specifically include each element of the asserted

patent's claims or even identify which claims it is asserting; nor is it required to describe

how the allegedly infringing products work.  *See McZeal*, 501 F.3d at 1357; *Mark IV*

*Indus. Corp. v. Transcore, L.P.*, Civ. No. 09-418-GMS, 2009 WL 4828661 (D. Del. Dec.

2, 2009).  As the court in *McZeal* observed, all a plaintiff ordinarily has access to at this

stage of litigation is public information and knowledge.  *McZeal*, 501 F.3d at 1358.

Therefore, a plaintiff cannot be expected to allege factual details toward how an

infringing device works.  "[T]he specifics of how [defendant's] purportedly infringing

device works is something to be determined through discovery."  *Id.*

### a. AMD

Only two paragraphs in plaintiff's complaint pertain to AMD, RIM, and Alacritech

individually. (D.I. 32 at ¶¶ 56, 171) They allege:

> 56. AMD manufactures and sells infringing **processors and chipsets
> that permit peer-to-peer I/O data transfer using northbridge-
> southbridge architecture**, including without limitation chipsets that are
> sold with HP computers.
> . . .
> 171. AMD manufactures, uses, sells and offers to sell, and/or imports into
> the United States . . . products and services that infringe . . . the '028
> Patent, including without limitation **chipsets and motherboards using
> northbridge-southbridge architecture that are incorporated in HP
> computers**, as well as any other processors or devices acting or capable
> of acting in the manner described and claimed in the '028 patent.

(D.I. 32 at ¶¶ 56, 171) (emphasis added) These allegations mimic Form 18 insofar as

the direct infringement pleading only needs to allege that a defendant is "making,

selling, and using" a general category of products analogous to "electric motors." *See*

*Eidos*, 686 F. Supp. 2d at 467-68. "[A]t a minimum, [the plaintiff] must allege, in general

terms, an infringing product." *Fifth Mkt., Inc. v. CME Group, Inc.*, Civ. No. 08-520-GMS,

2009 WL 5966836, at ¶ 3 (D. Del. May 14, 2009) In *Fifth Market*, Chief Judge Sleet

found that the plaintiff's complaint was insufficient because it failed to identify any

infringing product or method. *Id.* The plaintiff had only alleged that the defendants

infringed by "making, using, selling, and/or offering for sale products and methods

covered by the claims of" the patent-in-suit and referenced a product - the "Globex®

platform" – only in the facts section of its complaint. *Id.*

In contrast, plaintiff at bar has identified general categories of accused products –

processors, chipsets, and motherboards – in its infringement allegations against AMD.

Moreover, plaintiff has described the means by which AMD's products allegedly infringe

(AMD's products "permit peer-to-peer I/O data transfer using northbridge-southbridge

architecture"),[5] which provides additional notice to AMD of what the allegation entails.

*See McZeal*, 501 F.3d at 1357 (noting that the plaintiff's complaint described the means

by which the defendant allegedly infringed in finding the pleadings to be sufficient).

> ### b. HP

Plaintiff's infringement allegations against HP contain similar wording and read, in

part:

> 35. . . . HP manufactures and sells electronic devices, including, without
> limitation, **personal computers using chipsets and motherboards that
> enable peer-to-peer I/O data transfer using a "northbridge-
> southbridge" chip architecture** . . . infringing the '028 patent.
> . . .
> 152. HP manufactures, uses, sells and offers to sell, and/or imports into
> the United States . . . products and services that infringe . . . the '028
> [p]atent, including without limitation **devices using Intel, Nvidia, and
> AMD motherboards and chipsets**, as well as any other processors or
> devices acting or capable of acting in the manner described and claimed
> in the '028 patent.

(D.I. 32 at ¶¶ 35, 152) (emphasis added)  While the former paragraph (¶ 35) identifies a

general category of products – personal computers – the latter (¶ 152) does not appear

to limit the type of accused devices to computers.  While merely accusing "devices" of

infringement would not suffice to identify a product category akin to "electric motors," the

allegations against HP, taken as a whole, do seem to focus on computers.  Moreover,

plaintiff narrows the universe of accused devices to those using specific motherboards

and chipsets.  This detailed limitation appears in both ¶ 35 and ¶ 152 and is sufficient to

---

[5] Plaintiff refers to "northbridge-southbridge" architecture in the facts section of its complaint as a means "to transfer data directly between I/O devices across a bus that bypasses the CPU and central memory."  (D.I. 32 at ¶ 5)

put HP on notice of the infringement allegations. These motherboards and chipsets, according to plaintiff, provide the means for infringement because they render the accused devices "capable of acting in the manner described and claimed in the '028 patent."[6]  (*Id.* at ¶ 152)

HP contends that, because its product line includes a myriad of electronic devices including computers, servers, printers, and smartphones, it needs more detailed allegations to know which of its hundreds or thousands of products are being accused of infringement. (D.I. 225 at 1) However, plaintiff's allegation that many different products are infringing on its patent does not render the complaint insufficient, especially when the products share a specific common characteristic (i.e. the specified motherboards and chipsets) relevant to the patented technology. *See Bender v. Broadcom Corp.*, Civ. No. 09-1147-MHP, 2009 WL 3571286, at *4 (C.D. Cal. Oct. 30, 2009) ("There is nothing inherently implausible about an allegation that a large number of a defendant's various product lines infringe the patent when those product lines may be expected to have certain basic components, i.e. computer chips, in common and the patent claims technology relating to those components."). Here, it is facially plausible that any of HP's devices that contain allegedly infringing chipset and motherboards may be infringing the '028 patent, whether such devices are limited to computers or not.

### c. RIM

For the same reasons that applied to AMD and HP, plaintiff's allegations are sufficient to put RIM on notice of the general category of products being accused of

---

[6] Any ambiguity about whether the accused HP devices are limited to personal computers can be resolved during discovery, given the sufficient detail in the rest of the allegations against HP.

infringement.  Plaintiff names cell phones as RIM's allegedly infringing products and

describes the means of infringement as named processors contained in the cell phones.

(D.I. 32 at ¶ 51)  Moreover, plaintiff names specific products, even models, that

allegedly infringe on the '028 patent:

> 166.  RIM and RIM US manufacture, use, sell and offer to sell, and/or
> import into the United States . . . products and services that infringe . . .
> the '028 [p]atent, including without limitation **devices incorporating
> Cypress Semiconductor's West Bridge architecture (which is used in
> Blackberry Bold, Curve, and Pearl devices), Marvell PXA 270
> Application Processors (which are used in Blackberry 7130,
> Blackberry 8150, Blackberry 8300, Curve, Bold, and Thunder
> devices), and PXA 901 Application Processors (which are used in
> Blackberry 8700 devices)**, as well as any other processes or devices
> acting or capable of acting in the manner described and claimed in the
> '028 [p]atent.

(D.I. 32 at ¶ 166) (emphasis added)  Not only do the allegations against RIM

name a general category of products (cell phones),[7] but they also point out

specific architectures and processors that have been incorporated into the

accused cell phones.  Additional detail provided by plaintiff's naming of specific

product models can also guide discovery.  Thus, plaintiff's complaint contains

sufficient notice of which RIM products are allegedly infringing.

### d. Alacritech

Finally, plaintiff alleges:

> 158.  Alacritech manufactures, uses, sells and offers to sell, and/or
> imports into the United States . . . products and services that infringe . . .
> the '028 [p]atent, including without limitation **Alacritech data offload**

---

[7] Plaintiff's clearly accuses RIM's cell phones of infringing.  Compared to the
allegations against HP ("HP manufactures and sells electronic devices, including,
without limitation, personal computers"), plaintiff's allegations against RIM are even
more narrowly tailored ("RIM . . . manufacture[s] and sell[s] cell phones containing
infringing processors . . . .").  (D.I. 32 at ¶¶ 35, 51)

> **technology, Alacritech Scalable Network Accelerator cards, and other Alacritech scalable network solutions**, as well as any other processors or devices acting or capable of acting in the manner described and claimed in the '028 [p]atent.

(D.I. 32 at ¶ 158) (emphasis added)  This pleading sufficiently identifies specific categories of products (Scalable Network Accelerator cards) and methods (data offload technology, scalable network solutions), pursuant to Form 18 and *McZeal*.  Plaintiff also provides further detail regarding the alleged infringing nature of these products and methods by quoting from an Alacritech document that both parties refer to as the "White Paper."[8]  (D.I. 32 at ¶ 41)  Although Alacritech contends that its White Paper does not teach any of the technology in the '028 patent and so plaintiff's allegations are facially implausible, resolution of such factual determinations is not appropriate at this stage of the litigation. *See Mallinckrodt I*, 670 F. Supp. 2d at 354.

### 2. Indirect Infringement

In addition, plaintiff asserts that defendants indirectly infringe by "inducing or contributing to infringement." (D.I. 32 at ¶¶ 181, 184) Under 35 U.S.C. § 271(b), "whoever actively induces infringement of a patent shall be liable as an infringer." "To demonstrate inducement of infringement, the patentee must establish 'first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.'" *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 647 F. Supp. 2d 323, 335 (D. Del. Aug. 20, 2009) (citing *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 697-98 (Fed. Cir. 2008)); *see*

---

[8] The full title of the White Paper is "Enabling Greater Scalability and Improved File Server Performance with the Microsoft® Windows Server® 2003 Scalable Networking Pack and Alacritech® Dynamic TCP Offload." (D.I. 165, ex. 2)

*also Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009).  As such, a complaint stating a claim for inducement must allege the requisite knowledge and intent.  *Mallinckrodt I*, 670 F. Supp. 2d at 354.

For contributory infringement, an infringer must sell, offer to sell or import into the United States a component of an infringing product "knowing [the component] to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use." 37 U.S.C. § 271(c); *see Lucent Techs. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009).  Therefore, an allegation of contributory infringement must also plead requisite knowledge of the patent-in-suit at the time of infringement.  *Mallinckrodt I*, 670 F. Supp. 2d at 355.  Defendants contend that plaintiff failed to plead the requisite knowledge element of indirect infringement.  (D.I. 165 at 21; D.I. 222 at 6; D.I. 225 at 7; D.I. 227 at 7)

### a. AMD, RIM and Alacritech

Plaintiff proffers virtually no specific allegations of indirect infringement against AMD, RIM, and Alacritech.  Instead, plaintiff simply inserts, where it lodges an allegation of direct infringement, that defendants were "directly and/or indirectly" infringing.  (*See, e.g.*, D.I. 32 at ¶¶ 152, 158, 166, 171)  Plaintiff's complaint also contains a general allegation that "[a]t all relevant times, [d]efendants have had actual and constructive notice that their conduct infringed on the claims of the '028 [p]atent but nevertheless continued their infringing conduct."[9]  (*Id.* at ¶ 185)

---

[9] These allegations parallel those made with respect to other defendants, but the other defendants have answered.

11

In a similar case, *Mallinckrodt I*, the holders of a patent on remotely powered magnetic resonance injectors brought suit against two competitors, and both competitors filed motions to dismiss indirect infringement claims for the same reasons as defendants at bar. *Mallinckrodt I*, 670 F. Supp. 2d at 352. Judge Farnan held that, for a claim of indirect infringement (both contributory infringement and inducement), a plaintiff's complaint must sufficiently plead that "the alleged infringer knew or should have known [its] actions would induce actual infringement," which "necessarily includes the requirement that [the alleged infringer] knew of the patent" at the time it was committing the allegedly infringing activities. *Id.* at 354. Because the plaintiff failed to plead sufficient facts to allow the court to infer an allegation of knowledge, Judge Farnan granted defendants' motion to dismiss the indirect infringement claims.[10] *Id.*

Likewise, plaintiff at bar fails to allege sufficient facts that would allow the court to infer that AMD, RIM or Alacritech had any knowledge of the '028 patent at the time they were committing the allegedly infringing activities. *See id.* Instead, it resorts to a mere recitation of the elements for indirect infringement, which is insufficient.[11] Plaintiff

---

[10] The plaintiffs in *Mallinckrodt I* subsequently submitted a proposed amended complaint, which Judge Farnan found sufficiently pled indirect infringement. *Mallinckrodt Inc. v. E-Z-EM Inc. (Mallinckrodt II)*, 671 F. Supp. 2d 563, 569 (D. Del. 2009). Plaintiff at bar contends that its amended complaint (D.I. 32) is substantially similar to the amended complaint allowed in *Mallinckrodt II*. (D.I. 213 at 22) However, the amended complaint in *Mallinckrodt II* did more than merely allege legal conclusions of the knowledge and intent elements. It alleged that defendants became aware of the patent-in-suit shortly after its issuance, as demonstrated by papers they filed with the United States Patent and Trademark Office that identified the patent-in-suit as prior art. *Mallinckrodt II*, 671 F. Supp. 2d at 569. Plaintiff makes no allegation of knowledge against AMD, RIM, or Alacritech comparable to that in *Mallinckrodt II*.

[11] Plaintiff's use of language such as "directly and/or indirectly" infringing, without further support for the indirect infringement allegations, is also disfavored by the court. *See Eidos*, 686 F. Supp. 2d at 469 ("Plaintiffs have not guided the course of discovery in this action by utilizing conditional language throughout their complaint.").

12

argues that defendants had knowledge of the '028 patent "at least since the date of the suit." (D.I. 213 at 24)  However, knowledge after filing of the present action is not sufficient for pleading the requisite knowledge for indirect infringement.  *See Mallinckrodt I*, 670 F. Supp. 2d at 354 n.1 ("The [c]ourt is not persuaded by [p]laintiffs' contention that the requisite knowledge can be established by the filing of the [p]laintiffs' [c]omplaint.").

Accordingly, AMD, RIM, and Alacritech's motions to dismiss the indirect infringement claims shall be granted.  Under Federal Rule of Civil Procedure 15(a), leave to file amended complaints "shall be freely given when justice so requires."  *See Gooding v. Warner-Lambert Co.*, 744 F.2d 354, 358 (3d Cir.1984).  The court will give leave to plaintiff to amend its indirect infringement claims against AMD, RIM, and Alacritech.

### b. HP

On the other hand, plaintiff dedicates several paragraphs toward allegations that HP's predecessor, Compaq, learned of plaintiff's technology claimed in the '028 patent as early as 1996 and knew such information was confidential.  (D.I. 32 at ¶¶ 28-32) Plaintiff and HP exchanged proprietary information in 1997 pursuant to a materials license agreement, which plaintiff contends was for evaluative purposes only and did not authorize HP's allegedly infringing activity.  (*Id.* at ¶¶ 30-33, 35)  When HP acquired Compaq in 2002, certain Compaq employees who were involved in negotiating the agreement remained employed with HP.  (*Id.* at ¶ 34)  Under the *Mallinkrodt I* and *II* framework, these detailed factual assertions sufficiently allege that HP possessed

13

knowledge of the '028 patent at the time of its allegedly infringing activities and that it knew or should have known that such actions would induce actual infringement. *See Mallinckrodt I*, 670 F. Supp. 2d at 354.

### 3. Willfulness

HP further asserts that plaintiff has not sufficiently pleaded willfulness because plaintiff has failed to plead that HP knew about the '028 patent prior to the suit. (D.I. 225 at 7) However, as discussed *supra*, plaintiff has sufficiently alleged that HP had, or should have had, knowledge of the '028 patent. Moreover, the court declines to require more detail with respect to plaintiff's willful infringement claims than is required by Form 18. *See S.O.I.TEC*, 2009 WL 423989, at *2; *Fotomedia Tech., LLC v. AOL, LLC*, Civ. No. 07-255, 2008 WL 4135906 (E.D. Tex. Aug. 29, 2008) (rejecting challenge to complaint not detailing how defendants were alleged to have willfully infringed the patents-in-suit).

## V. CONCLUSION

For the foregoing reasons, the court denies in part and grants in part defendants' motions to dismiss. The court will give plaintiff the opportunity to amend its complaint with respect to its allegations of indirect infringement against AMD, RIM, and Alacritech. An appropriate order shall issue.

14